UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DALE L. FREEZE,

     Plaintiff,

v.                                Case No:  2:18-cv-148-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## OPINION AND ORDER

Before the Court is Plaintiff Dale Freeze's Complaint, filed on March 6, 2018. (Doc. 1).

Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security

Administration ("SSA") denying his claim for a period of disability and disability insurance

benefits and for supplemental security income. The Commissioner filed the Transcript of the

proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the

parties filed a joint legal memorandum detailing their respective positions. For the reasons set

out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social

Security Act, 42 U.S.C. § 405(g).

## I.     Social Security Act Eligibility, the ALJ Decision, and Standard of Review

### A.     Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason

of any medically determinable physical or mental impairment that can be expected to result in

death or that has lasted or can be expected to last for a continuous period of not less than twelve

months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.

The impairment must be severe, making the claimant unable to do his previous work or any other

substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.  Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

**B.  Procedural History**

On July 22, 2009 and October 26, 2009, Plaintiff filed applications for disability insurance benefits and for supplemental security income respectively.  (Tr. at 1415-23).  Plaintiff asserted an onset date of March 31, 2008.  (*Id.* at 1415, 1417).  Plaintiff's claims were denied initially and not appealed.  (*Id.* at 18).  Plaintiff filed the instant applications for disability insurance benefits and supplemental security income on December 15, 2010, alleging the same onset date of March 31, 2008.  (*Id.* at 51, 171-81).  Plaintiff's applications were denied initially on April 13, 2011 and on reconsideration on June 28, 2011.  (*Id.* at 25, 51-56).  A hearing was held before Administrative Law Judge M. Dwight Evans on February 28, 2013.  (*Id.* at 2361-2395).  The ALJ issued a partially favorable decision on May 30, 2013, finding Plaintiff was disabled from March 31, 2008 through October 16, 2010.  (*Id.* at 1347-59).

On January 30, 2015, the Appeals Council granted Plaintiff's request for review.  (*Id.* at 1361-65).  On March 18, 2015, the Appeals Council issued a partially favorable decision, finding Plaintiff's prior July 22, 2009 application should be reopened and finding that Plaintiff was disabled from March 31, 2008 through March 31, 2013.  (*Id.* at 1366-72).  The Appeals Council also vacated the prior hearing decision and remanded the claim back to the ALJ for a determination as to whether Plaintiff had medically improved and whether he was disabled under the Act from April 1, 2013 through the present.  (*Id.* at 1373-76).

Upon remand, a second hearing was held before Administrative Law Judge ("ALJ") William G. Reamon on February 10, 2017. (*Id.* at 2396-2454). The ALJ issued an unfavorable decision on June 14, 2017, finding Plaintiff's disability ended on April 1, 2013 and Plaintiff had not become disabled again since that date. (*Id.* at 25-42).

On January 8, 2018, the Appeals Council denied Plaintiff's request for review. (*Id.* at 16-19). Plaintiff filed a Complaint (Doc. 1) in the United States District Court on March 6, 2018. This case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 20).

## C.    Summary of the ALJ's Decision

Generally, an ALJ follows a five-step evaluation to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920.[1] When the issue is cessation of disability benefits, then the ALJ must follow an eight-step evaluation for the Title II claim and a seven-step process for the Title XIV claim to determine if a plaintiff's disability benefits should continue. *See* 20 C.F.R. §§ 404.1594(f), 416.994(b).

At step one for a Title II claim, the ALJ must determine if the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1594(f). If not, then at step two for a Title II claim and step one for a Title XIV claim, the ALJ must determine whether the claimant has an impairment or combination of impairments that meet or equal the severity of an impairment in the listings. 20 C.F.R. §§ 404.1594(f), 416.994(b). If the claimant can satisfy a listing, then the claimant's "disability will be found to continue." *Id.*

---

[1] The parties cite to the five-step sequential analysis rather than the seven or eight step analysis for cessation of disability benefits. (Doc. 21 at 3).

If not, then at step three for Title II claims and step two for Title XIV claims, the ALJ must determine if the claimant has experienced medical improvement as shown by a decrease in medical severity. *Id.* If there has been medical improvement, then the claimant proceeds to step four for Title II claims and step three for Title XIV claims, and if not, then the claimant proceeds to step five for Title II claims and step four for Title XIV claims. *Id.*

If there has been medical improvement, then at step four for Title II claims and step three for Title XIV claims, the ALJ must determine whether the medical improvement is related to the claimant's ability to work – *i.e.*, whether there has been an increase in the claimant's residual functional capacity ("RFC"). *Id.* If the medical improvement does not relate to the ability of claimant to do work, then the ALJ proceeds to step five for Title II claims and step four for Title XIV claims; if it is related, then the ALJ proceeds to step six for Title II claims and step five for Title XIV claims. *Id.*

At step five for Title II claims and step four for Title XIV claim, the ALJ determines if any exceptions listed in 20 C.F.R. §§ 404.1594(d) and (e), and 416.994(b)(3) and (b)(4) apply. *See* 20 C.F.R. §§ 404.1594(f) and 416.994(b). If none of them apply, then the claimant's disability will be found to continue. *Id.* If an exception from the first group applies, then the ALJ must proceed to step six for Title II claims and step five for Title XIV claims. *Id.* If an exception from the second group applies, then a claimant's disability will be found to have ended. *Id.*

If there is medical improvement that is shown to be related to a claimant's ability to do work, then the ALJ must determine at step six for Title II claims and step five for Title XIV claims if all of the claimant's current impairments in combination are severe. 20 C.F.R. §§ 404.1594(f), 416.994(b). If the RFC shows significant limitations in a claimant's ability to do

basic work activities, then the ALJ will proceed to step seven for Title II claims and step six for Title XIV claims. *Id.* If the evidence shows that a claimant's current impairments in combination do not significantly limit the claimant's physical or mental abilities to do basic work activities, then these impairments will not be considered severe, and the claimant will no longer be considered disabled. *Id.*

At step seven for Title II claims and step six for Title XIV claims, if a claimant's impairments are severe, the ALJ will assess the claimant's residual functional capacity ("RFC") and a claimant's ability to perform past relevant work. *Id.* "The claimant bears the burden of demonstrating inability to perform his past kind of work, not merely inability to perform a specific past job*." Long v. Acting Comm'r of Soc. Sec. Admin.*, No. 18-11117, 2018 WL 5115408, at *1 (11th Cir. Oct. 19, 2018).

If a claimant is not able to return to past relevant work, then at step eight for Title II claims and step seven for Title XIV claims, the ALJ will determine whether the claimant is able to do other work in the national economy given Plaintiff's RFC, age, education, and past work experience. *Id.* If a claimant can perform other work, he or she is no longer considered disabled. *Id.* If a claimant cannot perform other work, then his or her disability continues. *Id.*

Here, the ALJ found the most recent favorable medical decision finding Plaintiff was disabled was the decision dated March 18, 2015. (Tr. at 28). The ALJ determined that this decision is known as the "'comparison point decision' or CPD." (*Id.*). At the time of the CPD, the ALJ found Plaintiff to have the following medically determinable impairment: systemic vasculitis and that this impairment met listing 14.03 of 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 404.1520(d) and 416.920(d)). (*Id.*).

At step one of the sequential evaluation for Title II claims, the ALJ found that Plaintiff had not engaged in substantial gainful activity as of April 1, 2013. (*Id.*). At step two,[2] the ALJ found that as of April 1, 2013, Plaintiff suffered from the following medically determinable impairments: "CNS vasculitis, history of CVA, common migraine, post right shoulder replacement (pre-op right shoulder avascular necrosis), and obesity. These are the claimant's current impairments." (*Id.*). Since April 1, 2013, the ALJ found at step three that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 404.1525, 404.1526, 416.925, and 416.926). (Tr. at 30).

At step four, the ALJ determined that medical improvement occurred as of April 1, 2013. (*Id.*). The ALJ found that the medical improvement is related to the ability to work because, as of April 1, 2013, Plaintiff's CPD impairments no longer met or medically equaled the same listing that was met at the time of the CPD (20 C.F.R. §§ 404.1594(f)(6) and 416.994(b)(2)(iv)(A)). (*Id.*). At step six, the ALJ determined that beginning on April 1, 2013, Plaintiff continued to have a severe impairment or combination of impairments. (*Id.*).

At step seven, the ALJ found that beginning on April 1, 2013 and based on the current impairments, Plaintiff has had the RFC to perform the full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). (*Id.* at 31). At step eight, the ALJ determined that beginning on April 1, 2013, Plaintiff has been unable to perform his past relevant work as a truck driver, tanker truck driver, dump truck driver, and corrections officer. (*Id.* at 40). The ALJ found that beginning on April 1, 2013, based on Plaintiff's current impairments, and after

_____

[2] The Court refers to the step numbers for Title II claims. The Court recognizes that with the exception of step one, these steps mirror those for the Title XIV claims.

considering Plaintiff's age, education, work experience, Plaintiff "has been able to perform a significant number of jobs in the national economy." (*Id.* at 41). Specifically, after obtaining the testimony of a vocational expert, the ALJ determined that an individual with Plaintiff's age, education, work experience and RFC was able to perform the follow jobs: (1) election clerk, DOT # 205.367-030, sedentary, SVP 2; (2) escort vehicle driver, DOT # 919.633-022, sedentary, SVP 2; and (3) document preparer, DOT # 249.587-018. (*Id.*). The ALJ concluded that Plaintiff's disability ended as of April 1, 2013 and Plaintiff has not become disabled again since that date. (*Id.* at 42).

### D.    Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking

into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II.    Analysis

On appeal, Plaintiff raises three issues. As stated by the parties, they are:

(1)     Whether the ALJ's findings that the opinion of treating physician Dr. Alper is entitled to "mild weight" and the opinion of treating physician Dr. Justiz is entitled to "some weight" are supported by substantial evidence and comport with the requirements of 20 C.F.R. §§ 404.1527, 416.927, and SSR 96-2p.

(2)     Whether the ALJ's assessment of Plaintiff's subjective complaints is supported by substantial evidence, as required by 20 C.F.R. §§ 404.1529(c) and 416.929(c).

(3)     Whether substantial evidence supports the ALJ's RFC finding.

(Doc. 22 at 16, 24, 29). The Court addresses each issue in turn.

### A.    Whether the ALJ's Findings as to the Weight Afforded the Opinions of Dr. Alper, Dr. Justiz, and Dr. Bell are Supported by Substantial Evidence.

Plaintiff argues that the ALJ's rationale for discounting Dr. Alper's opinions is not supported by substantial evidence. (Doc. 21 at 17). Additionally, Plaintiff argues that the ALJ failed to supply good cause for rejecting Dr. Justiz's opinion. (*Id.* at 19). Finally Plaintiff argues that the ALJ erred in assigning great weight to the opinion of non-examining medical expert Dr. Bell. (*Id.*).

The Commissioner responds that the ALJ identified good reasons supported by substantial evidence for giving the opinions of Dr. Alper and Dr. Justiz only some or mild weight. (*Id.* at 21).

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the ALJ's RFC determination at step four. *See Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).

The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has concluded that good cause exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.*

The Court addresses the arguments raised as to Dr. Alper's opinions and then turns to the opinions of Dr. Justiz and Dr. Bell.

*Dr. Alpers' Opinions*

Plaintiff argues that the ALJ erred in assigning mild weight to Jeffrey Alper, M.D.'s opinions. (Tr. at 17). Plaintiff contends that the ALJ provided only one reason for discounting Dr. Alper's opinions, specifically that the ALJ found Dr. Alper's opinions were inconsistent with

Dr. Alper's own treatment notes and the notes of others.  (*Id.*).  Basically, Plaintiff contends that the treatment notes of record showed Plaintiff had marked abnormalities on examinations by Dr. Alper and other medical providers.  (*Id.* at 17, 19).

The Commissioner argues that the ALJ explained that Dr. Alper's finding of severe limitations was inconsistent with the "none to mild abnormalities noted in Plaintiff's examinations."  (*Id.* at 21).  The Commissioner contends that the ALJ discussed the numerous generally unremarkable examination findings in the record from Dr. Alper.  (*Id.*).

Here, the ALJ summarized Dr. Alper's treatment notes beginning in July 2013 as follows:

> Treatment notes from Dr. Alper in July 2013 showed claimant to report continuing right shoulder pain.  He denied headaches.  He reported fatigue.  Physical examination was unremarkable.  His mental status, muscle strength, joints, and neurological function were normal.  His lab work was unremarkable.  In August 2013, claimant reported having gone on vacation to Indiana for two weeks.  He indicated he had headaches and knee pain, poor concentration, and poor memory.  He had no swollen joints.  Physical examination was unremarkable.  In September 2013, claimant reported feeling better overall and was enrolled in class to become a cardiovascular tech.  He reported back stiffness due to extended sitting.  Blurred vision was minimal.  In July 2014, claimant returned and reported that his chronic conditions were stable.  He denied any new neurological symptoms.  In November 2014, he reported he had been stable and occasionally took pain medications for arthralgias or myalgias.  His condition was stable but he noted headaches.  His lab work was unremarkable.  Examination showed normal mental status, neurological function, strength, joint function, and no tenderness.  In February 2015, claimant noted being stable overall for the last few months but with fluctuating arthralgias and myalgias.  He occasionally took pain medications.  His vision was stable.  He denied headaches or neurological symptoms.  His lab work remained stable with no inflammatory markers (78F, 79F).

(Tr. at 37).

In addition, the ALJ summarized Dr. Alper's treatment notes in March 2016 as follows. (Tr. at 35).  Plaintiff reported no symptoms except for fatigue and blurred vision concerning his diagnosis of CNS vasculitis.  (*Id.*).  Dr. Alper found Botox injections controlled Plaintiff's

headaches.  (*Id.*).  Plaintiff denied weakness, speech problems, or sensory changes.  (*Id.*).

Plaintiff was sleeping well, showed no tenderness or swollen joints, had normal neurological

function, had full muscle strength, had normal mental status, and lab results as to bloodwork had

only mild abnormalities.  (*Id.*).

Dr. Alper completed Medical Source Statements on April 28, 2015 and on February 4,

2017.  (*Id.* at 1982-86, 2224-28).  The ALJ accurately summarized these opinions as follows:

> Dr. Alper opined in April 2015 that the claimant could lift no more than 10/20
> pounds and he could not stand, sit, or walk for more than one hour in a day.  He
> had to elevate his legs while sitting, claimant would frequently have pain that
> interfered with his attention and concentration, he had significant limitations
> reaching, handling, or fingering, and he would likely miss three or more days in a
> month due to his symptoms (80F).  Dr. Alper opined in February 2017 that the
> claimant was unable to sit for even one hour or stand or walk for even one hour in
> an eight-hour day.  Claimant was required to elevate his legs while sitting and
> change position every 15 minutes.  Claimant was able to carry up to 10 pounds.
> Claimant had significant limitations in reaching, handling, or fingering. Claimant
> frequently experienced pain or fatigue which interfered with his attention and
> concentration during the day.  He would need to take unscheduled breaks.  He
> would likely miss more than three days a month due to symptoms (70F).

(Tr. at 39).

After summarizing Dr. Alper's opinions, the ALJ afforded Dr. Alper's opinions mild

weight, finding the opinions to be inconsistent with Dr. Alper's own treatment notes and the

notes of other medical providers.  (*Id.* at 40).  The ALJ determined that these treatment notes

"show largely mild or no abnormalities with repeated examination as outlined in detail above."

(*Id.* at 40).

Plaintiff cites to some abnormal findings in Dr. Alper's and other doctor's treatment

notes.  (Doc. 21 at 18).  However, Plaintiff does not argue that the ALJ mischaracterized the

treatment notes that demonstrate mild or no abnormalities.  Further, Dr. Alper's treatment notes

show some mild abnormalities, such as Plaintiff reported fatigue, minimal blurred vision, some

joint pain in the right shoulder, and some headaches, but otherwise many of Plaintiff's examinations were largely normal, including his mental status and his muscle strength. (*See, e.g.*, Tr. at 1496, 1499, 1502, 1653, 2175, 2178, 2181, 2184, and 2187).

A court must affirm an ALJ's decision if there exists "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel*, 631 F.3d at 1178. Moreover, it is not for the Court to decide the facts anew, make credibility determinations, or reweigh the evidence. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "Even if the evidence preponderates against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Here, the ALJ cited to substantial evidence from Dr. Alper's own treatment notes as well as other medical providers' treatment notes that support the ALJ's finding that Dr. Alper's own treatment notes and the notes of other medical providers are inconsistent with Dr. Alper's opinions. Specifically, the Court finds that many of the treatment notes generally reflect milder impairments and limitations compared to Dr. Alper's opinions for the relevant time period. Thus, the Court finds substantial evidence supports the ALJ's decision to afford mild weight to Dr. Alper's opinions.

### Dr. Justiz's Opinion

Plaintiff argues that the ALJ erred in assigning some weight to William Justiz, M.D.'s opinion. (Doc. 21 at 19). Further, Plaintiff states that the reason the ALJ afforded some weight to Dr. Justiz's opinion was that his opinion is inconsistent with his physical examination findings. (*Id.*). Plaintiff argues that this reason was not supported by substantial evidence. (*Id.*).

The Commissioner argues that the ALJ identified good reasons supported by substantial evidence for affording Dr. Justiz's opinion some weight. (*Id.* at 21).

The ALJ thoroughly summarized Dr. Justiz's treatment notes. (Tr. at 33-36). The following is a portion of the ALJ's summary in relevant part:

> In April 2013 claimant sought follow up treatment with Dr. Justiz. He reported mild upper spine pain. Claimant was diagnosed with thoracic spondylosis. Examination showed no lumbar or lower extremity tenderness, normal sensation, normal strength, and normal reflexes in all extremities but for minimal weakness in his right hamstring. Previous EMG/NCV testing from March 2013 was noted to show no evidence of radiculopathy. He next followed up in October 2013 at which time he reported doing fairly well up until two weeks before the appointment when he began to have thoracic pain. Headaches lasting two hours occurred no more than twice a week and were relieved by napping. Physical examination was wholly unremarkable including a normal gait, stance, balance, coordination, motor strength, sensation, and no tenderness to palpation. MRI of the head was unremarkable. CT angiography of the head and neck showed no evidence of CNS vasculitis. Claimant's BMI was approximately 48 (46F, 51F, 83F). Claimant received acute treatment for an isolated significant headache in March 2014 (51F, 83F).
>
> In June 2014 claimant reported to Dr. Justiz having anxiety five days per week. He continued to smoke a pack of cigarettes daily. Claimant reported having a headache every other day with no nausea. He denied feeling poorly or other significant symptoms of anxiety or depression. Physical examination was essentially unremarkable. In December 2014, claimant reported intermittent headache only once a month which was otherwise well-controlled. He had had no stroke like symptoms since June. Examination was unchanged. In January 2015, claimant reported headaches once a day for the last two weeks. He had no weakness, numbness, loss of vision, or slowed speech (83F). With respect to diagnostic testing, MRI of the thoracic spine from April 2013 showed only minor abnormalities. MRI of the brain from July 2013 showed no changes since July 2012. CT of the brain from March 2014 showed mild abnormalities. CT of the head from March 2014 with contrast showed a right artery occlusion. MRV of the brain from January 2015 was normal. MRI of the brain showed mild abnormalities (83F). . . .
>
> In April 2015, claimant reported to Dr. Justiz having headaches once to three times a week lasting 20 to 30 minutes which were generally well-controlled. He was pain free. He indicated having no stroke-like symptoms. He was not feeling poorly and had no breathing problems, musculoskeletal·problems, neurological problems or dizziness, no anxiety, no depression, no sleep disturbance, and no sensory dysfunction. His blood pressure was controlled. Physical examination was unremarkable. Claimant's gait and stance were normal (73F). . . .
>
> Treatment notes from Dr. Justiz in December 2016 showed claimant to report headaches 3-4 times a month of diminished intensity and intermittent diplopia. He

was generally not feeling poorly and he reported no anxiety or depression. Physical examination was essentially unremarkable. Claimant was to follow-up in six months. He had no dizziness, vertigo, motor disturbance, or sensory disturbance. . . .

In late April 2016, treatment notes from Dr. Justiz show claimant received Botox injections for reported headaches. In late June claimant reported intermittent lightheadedness and no other symptoms. Claimant's blood pressure was controlled. His BMI was 48.3. Examination showed a normal spine and normal neurological function, sensation, strength, gait, balance, and stance. Claimant received additional Botox injections in late July 2016 (66F).

(*Id.* at 33, 35, 36).

On February 1, 2017, Dr. Justiz completed a Stroke Impairment Questionnaire. (*Id.* at 1966-72). The ALJ accurately summarized Dr. Justiz's opinion as follows:

Neurologist Dr. Justiz indicated in a stroke questionnaire from February 2017 that the claimant suffered from back problems, dizziness, weakness, and headaches. He did not have persistently disturbed gross movement or gait and station. Claimant was able to sit for four hours in an eight-hour day or stand or walk for two hours in an eight-hour day. He was able to lift up to 20 pounds. His symptoms would periodically interfere with his attention and concentration. Claimant was capable of performing moderately stressful work. Claimant was emotionally stable. Claimant would likely miss three times a month due to his symptoms (68F). This opinion is given some weight as while the opinion is within the specialty of Dr. Justiz, repeated examinations showed none to only mild abnormalities as outlined in detail above which are inconsistent with the more severe limitations assessed in this opinion.

(*Id.* at 39).

Plaintiff does not claim that the ALJ mischaracterized Dr. Justiz's treatment notes or his opinion. Instead, Plaintiff argues that "the record is replete with markedly abnormal physical examination findings, often requiring medical intervention, such as hormone replacement, phlebotomy, medication management, and injection therapy." (Doc. 21 at 19). Plaintiff cites to the portion of Dr. Justiz's treatment notes that support this statement. (*Id.*). However, the ALJ considered these treatment notes, but found that there are many of Dr. Justiz's treatment notes

that show generally unremarkable examination findings.  (*See, e.g.*, Tr. at 1520-21, 1540-41, 1690-92, 1907-1909, 1911-13, 1943-45, 1948-51, 2010-12).

As explained above, it is not for the Court to reweigh the evidence or decide the facts anew, but the Court must determine if the relevant evidence adequately supports the ALJ's conclusion.  *Winschel*, 631 F.3d at 1178; *Moore*, 405 F.3d at 1211.  Further, even if the evidence preponderates against the Commissioner's findings, a court must affirm the decision if it is supported by substantial evidence.  *Crawford*, 363 F.3d at 1158.  Here, the ALJ cited to substantial evidence from Dr. Justiz's own treatment notes as well as other medical providers' treatment notes that support the ALJ's finding that Dr. Justiz's own treatment notes and the notes of other medical providers are inconsistent with Dr. Justiz's opinion.  Specifically, many of Dr. Justiz's treatment notes generally support milder impairments and limitations compared with his opinion.  Thus, the Court finds substantial evidence supports the ALJ's decision to afford some weight to Dr. Justiz's opinions.

*Dr. Bell's Opinion*

Plaintiff argues that the ALJ erred by assigning great weight to the opinion of non-examining medical expert Dr. Bell.  (Doc. 21 at 19).  Plaintiff states that the ALJ found Dr. Bell's opinion well supported by the evidence and that it presented a careful analysis of Plaintiff's impairments and corresponding limitations.  (*Id.* at 19-20).  Plaintiff argues that Dr. Bell did not consider "the bulk of the evidence pertaining to the relevant time period" and, thus, the ALJ erred in affording Dr. Bell's opinion great weight.  (*Id.* at 20).  In addition, Plaintiff argues that Dr. Bell's opinion does not contain a function-by-function assessments and does not comment on the possibility that Plaintiff will be absent from work or will have difficulties with sustaining focus and concentration.  (*Id.*).

In the instant case, Gerald Bell, M.D. is a State agency non-examining physician and, thus, is not a treating physician. (Tr. at 1625-29). Even though non-examining doctors' opinions are not entitled to deference, an ALJ is nonetheless required to consider every medical opinion. *Bennett v. Astrue*, No. 308-CV-646-J-JRK, 2009 WL 2868924, at *2 (M.D. Fla. Sept. 2, 2009) (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)). "The ALJ is to consider a number of factors in determining how much weight to give to each medical opinion: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's 'opinion is with the record as a whole'; and (5) the doctor's specialization." *Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892, 893 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).

The ALJ thoroughly summarized Dr. Bell's evaluation of November 23, 2014 as follows:

> Dr. Bell indicated in his review of the record that EMG/NCV testing from March 2013 of the upper extremities was normal, musculoskeletal examination in April 2013 was relatively normal, MRI of the brain in July 2013 showed no changes since July 2012 and no acute changes, exam in August 2013 showed no tender points or swollen joints, musculoskeletal and neurological examinations in October 2013 were unremarkable, and MRI of the head at that time was slightly improved from the previous study (42F, 55F). Notably, vascular evaluation of the brain in July 2012 was unremarkable. In 2013, claimant reported being able to perform a range of sedentary work. Nerve and musculoskeletal examinations in March and April 2013 were relatively normal. Dr. Bell found the complications from vasculitis including brain infarcts and polyarthralgias met the requirements of adult listing 14.03 for systemic vasculitis beginning in March 2008 and continuing until April 1, 2013, at which time the claimant retained a sedentary level of functionality as more recent MRI and CT scans of the brain did not show new disease and repeated physical examinations were essentially unremarkable. Claimant also began to report starting in 2011 that he was able to lift up to 20 pounds and in early 2013 that he was able to lift up to 10 pounds (55F).

(Tr. at 34).

The ALJ afforded great weight to Dr. Bell's opinion, finding that it is "well supported by medically acceptable clinical findings and laboratory diagnostic techniques and is consistent with the medical evidence *from both before and after the opinion was rendered.* The opinion also presents a careful analysis of the relationship between the identified impairments and the resulting limitations and the examiner has program specific knowledge (55F)." (*Id.* at 39 (emphasis added)).

Plaintiff argues that the ALJ erred in affording great weight to Dr. Bell's opinion because he rendered his opinion on November 23, 2014 and, thus, Dr. Bell did not have the opportunity to consider the medical records after that date. (Doc. 21 at 20). The Court finds this argument unpersuasive. The ALJ specifically noted that Dr. Bell rendered his opinion prior to the dates of some of the medical evidence of record, but the ALJ found that Dr. Bell's opinion was consistent with the medical evidence from both before and after the date the opinion was rendered. (Tr. at 39). Thus, the ALJ did consider both the evidence prior to Dr. Bell's opinion and the medical evidence after his opinion and found that both were consistent with Dr. Bell's opinion.

As stated in the above sections, many of the treatment notes generally show unremarkable examination findings throughout the relevant period and these findings support Dr. Bell's opinion. Further, as the ALJ found, Dr. Bell's opinion analyses the relationship between the identified impairments and the resulting limitations. (*Id.*). Dr. Bell. determined that Plaintiff began improving in October 28, 2011 as he was able to sit, stand, or walk up to 2 hours daily and able to lift or carry up to 20 lbs. occasionally. (*Id.* at 1628). However, Dr. Bell found that on January 15, 2012, Plaintiff had severe limitations in activities dependent on sitting, walking, or standing and could lift no more than 10 lbs. (*Id.*). Dr. Bell noted that several months later, Plaintiff had strength of 5/5 in both upper and lower extremities, and testing did not show new

abnormalities.  (*Id.*).  Dr. Bell noted that on January 4, 2013, Plaintiff was able to lift up to 10

lbs., could sit for 6 hours, could stand for 4 hours, and could walk for 1 hour.  (*Id.*).  Dr. Bell also

noted that Plaintiff had some manipulative restrictions as to his right arm, and restrictions in

activities requiring stairs, unprotected heights, or moving machinery.  (*Id.*).  Dr. Bell found that

by April 1, 2013, Plaintiff's musculoskeletal examination was relatively normal.  (*Id.*).

The Court finds that substantial evidence supports that ALJ's determination to afford

great weight to Dr. Bell's opinion.  The ALJ noted that Dr. Bell did not have the opportunity to

review some of the medical records in evidence, but the ALJ did review these records and found

that Dr. Bell's opinion was consistent with all of the medical records at issue here.  Further, the

Court finds that Dr. Bell's opinion analyzed the relationship between the Plaintiff's impairments

and the resulting limitations.  Accordingly, the Court finds that the ALJ did not err in affording

great weight to Dr. Bell's opinion.

**B.      Whether the ALJ's Assessment of Plaintiff's Subjective Complaints Is
Supported by Substantial Evidence.**

Plaintiff argues that the ALJ erred in affording mild weight to Plaintiff's testimony.

(Doc. 21 at 24).  Plaintiff argues that his headaches remain severe, his traveling was isolated trips

out of state that resulted in exacerbated symptoms, and even though Plaintiff exercised at times,

by late 2016 he was noted to walk quite slowly and had balance problems.  (*Id.* at 24-25).

The Commissioner argues that the ALJ's evaluation of Plaintiff's subjective complaints

in this case complied with the regulatory framework and legal authority.  (*Id.* at 26).

To establish disability based on testimony of pain and other symptoms, a plaintiff must

satisfy two prongs of the following three-part test:  "(1) evidence of an underlying medical

condition; and (2) either (a) objective medical evidence confirming the severity of the alleged

pain; or (b) that the objectively determined medical condition can reasonably be expected to give

rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.3d 1221, 1223 (11th Cir. 1991)). After an ALJ has considered a plaintiff's complaints of pain, the ALJ may reject them as not credible, and that determination will be reviewed to determine if it is based on substantial evidence. *Moreno v. Astrue*, 366 F. App'x 23, 28 (11th Cir. 2010) (citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)).

If an ALJ discredits the subjective testimony of a plaintiff, then he must "articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225 (citations omitted). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)).[3]

Here, the ALJ found that Plaintiff's current medically determinable impairments could reasonably be expected to produce the alleged symptoms. (Tr. at 18). However, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the RFC. (*Id.*). The ALJ supported his finding as follows:

> The claimant's testimony overall is given only mild weight as the claimant's statements at the hearing concerning the alleged extreme severity of his headaches was not consistent with reports to his treatment providers which indicated Botox treatments had reduced his symptoms to minimal levels and at worst moderate pain. Additionally, as noted above, the claimant's frequent yearly travels out of State and

---

[3] Effective March 28, 2016, SSR 16-3p superseded SSR 96-7p. *See* SSR 16-3p, 2016 WL 1119029 (March 16, 2016). SSR 16-3p explains that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." *Id.* The Commissioner republished SSR 16-3p in October 2017. 82 Fed. Reg., 49,462 (Oct. 25, 2017).

reports to doctors of tremendous improvement, walking two miles a day, working out, exercising regularly, and having good energy and muscle strength are all inconsistent with his allegations of severe limitations generally and in mobility particularly (41F/6; 60F/16; 61F/68; 66F/59; 78F/13; 83F/39; 85F/9).

(Tr. at 40).

Plaintiff argues that: (1) his headaches remained severe throughout the relevant time period; and (2) the statement that Plaintiff's condition had steadily improved over time is inconsistent with the evidence as a whole. (Doc. 21 at 24-25). Plaintiff claims that due to these errors, the ALJ's credibility assessment is not supported by substantial evidence. (*Id.*). The Court addresses each of these arguments in turn.

First, Plaintiff argues that his headaches remained severe throughout the relevant time period. (Doc. 21 at 24-25). The ALJ specifically articulated that Plaintiff's alleged extreme severity of headaches was not consistent with his reports to his treatment providers that included reduced symptoms with Botox treatments and that his headaches at most caused moderate pain. (Tr. at 40). The medical records support the ALJ's statement. (*See, e.g.*, no headaches (*id.* at 1496, 1948, 2175); mild headaches (*id.* at 1499, 1502, 1519, 1688 (intermittent on right side, intensity 2/10 at worst in the last month since the Botox was given), 1942 (intermittent, intensity much better), 2008 (intermittent on right side, well-controlled, intensity of 5/10 at worst), 2178, 2181, 2184, 2187); headache (*id.* at 1539); headaches severe (*id.* at 1653)). Thus, the Court finds that substantial evidence supports the ALJ's decision that Plaintiff's alleged extreme severity of headaches is not generally consistent with many of the medical reports.

Second, Plaintiff argues that he did not improve tremendously during the relevant period and only performed exercise at certain times, experienced weight loss but remained extremely obese, and made isolated trips out of state that resulted in severe exacerbation of his symptoms. (Doc. 21 at 24-25).

At the hearing, Plaintiff testified that he travels to Indiana to visit family every year or eighteen (18) months. (Tr. at 2434-35). On his last trip to Indiana, Plaintiff went by airplane, stayed approximately ten (10) days, and visited family in various places. (*Id.* at 2435-36). In addition, Plaintiff testified that he uses the treadmill for three (3) minute intervals, rests, and then uses it again. (*Id.* at 2438). Plaintiff also reported to a physician that he had been walking twenty (20) to thirty (30) minutes at a time at a one-and-a-half to two-mile pace. (*Id.* at 2439). Further, Plaintiff testified that his maximum weight was 427 lbs., but at the time of hearing he was down to around 320 to 325 lbs. and continues to try to lose weight. (Tr. at 2436-37). The Court finds that Plaintiff's own testimony shows that his health improved during the relevant time period.

The Court finds that in the decision, the ALJ articulated an in-depth analysis of Plaintiff's subjective symptoms, the medical evidence, and the other evidence of record including Plaintiff's activities of daily living. (*Id.* at 31-40). The ALJ provided clearly articulated reasons supported by substantial evidence of record to afford mild weight to Plaintiff's subjective statements. The ALJ cited to a many treatment records to support his conclusions. Thus, the Court finds that substantial evidence supports the ALJ's findings to afford mild weight to Plaintiff's subjective statements.

C.    **Whether Substantial Evidence Supports the ALJ's RFC Finding.**

Plaintiff asserts that his treating physicians found that Plaintiff's severe impairments would cause him to be absent from work three or more days per month. (Doc. 21 at 29). Plaintiff argues that the ALJ erred in failing to include this limitation in Plaintiff's RFC. (*Id.* at 30).

The Commissioner argues that the ALJ's RFC is supported by the medical evidence of record. (*Id.* at 31). In addition, the Commissioner argues that Plaintiff's argument is based on the opinions of Dr. Justiz and Dr. Alper, but the ALJ properly afforded these treating physicians' opinions some or mild weight and, thus, was not required to adopt their limitation findings. (*Id.*).

"The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments. *Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009). In determining a claimant's RFC, the ALJ must consider all of the relevant evidence of record. *Barrio v. Comm'r of Soc. Sec.*, 394 F. App'x 635, 637 (11th Cir. 2010). However, the Eleventh Circuit has consistently held that "the claimant bears the burden of proving that he is disabled, and consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

In the first section, the Court found that the ALJ's decision to afford the opinions of Dr. Alper and Dr. Justiz some or mild weight was supported by substantial evidence. *See supra*. The ALJ decided to afford some or partial weight to these opinions in part because these opinions were inconsistent with the treating physicians' treatment notes. (Tr. at 39-40). The Court finds that due to these inconsistencies, the ALJ did not err in affording some or mild weight to these opinions and, consequently, in not adopting the limitations in these opinions – including the limitation that Plaintiff is likely to miss three or more days per month of work.

Accordingly, the Court finds that the ALJ did not err by failing to include additional limitations in Plaintiff's RFC regarding missing days of work. Further, the Court finds that substantial evidence supports the ALJ's RFC determination.

## III.  Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that substantial evidence supports the ALJ's decision and the decision was decided upon proper legal standards.

Accordingly, it is hereby **ORDERED**:

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on March 4, 2019.

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties